FILED ENTERED LODGED RECEIVED
FEB 26 2016
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DROP BOX

| | |
|---|---|
| SHERRYL FIGGS<br>Individually and on behalf of<br>Others Similarly Situated.<br>4304 Groveland Avenue<br>Baltimore, Maryland 21215<br><br>        **Plaintiff,**<br>v.<br><br>**LENDMARK FINANCIAL<br>SERVICES, LLC**<br>2118 Usher Street<br>Covington, Georgia 30014<br><br>        **SERVE ON:**<br><br>**Resident Agent**<br>The Corporation Trust<br>Incorporated<br>351 West Camden Street<br>Baltimore, Maryland 21201<br><br>        **Defendant.** | IN THE<br><br>CIRCUIT COURT OF MARYLAND<br><br>FOR<br><br>BALTIMORE CITY<br><br>CASE NO: _____ |

## CLASS ACTION COMPLAINT
## AND
## DEMAND FOR JURY TRIAL

Plaintiff, Sherryl Figgs, by and through her attorneys, Jane Santoni, Kathleen P. Hyland, and Williams & Santoni, LLP, hereby files this action against the Defendant, Lendmark Financial Services, LLC ("Lendmark" or "Defendant"). This action is filed on behalf of Ms. Figgs individually, and on behalf of a class of persons defined herein. For her Complaint, the Plaintiff alleges and states:

## **INTRODUCTION**

1. The Plaintiff files this complaint against the Defendant, Lendmark, because Lendmark violated Maryland commercial and common law, and breached contracts when it charged usurious interest rates to Plaintiff and other class members.

2. The Named Plaintiff and others similarly situated obtained loans through Lendmark. Most of these loans are for small cash amounts.

3. At the Defendant's election, the contract states that the applicable law is Maryland Annotated Code Commercial Law Article Subtitle 10 of Title 12, the Credit Grantor Closed End Credit Provisions and commonly referred to as "CLEC".

4. After consumers, like the Plaintiff, made timely and regular payments, the Defendant contacted them and offered to refinance their loans. Upon refinancing, the Defendant rolled hidden fees into the new credit agreements, in violation of the CLEC.

5. The Defendant's loan products include bogus insurance premiums and finance charges, which it double-counted when it refinanced the loans.

6. The Defendant also did not properly disclose the hidden fees, in violation of the Truth In Lending Act, 15 U.S.C. § 1601, *et. seq.* ("TILA").

7. Although the loan documents state that the simple interest is at the rate of 24%, as stated on the loan documents, the effective rate of interest is 27.68% (see Exhibit A attached).

8. The interest rate stated on the Named Plaintiff's loan is miscalculated, as a loan with those terms would yield a monthly payment of $97.01, rather than the stated monthly payment of $101.86. This miscalculation occurred because the Defendant is counting the insurance premiums towards interest.

9. The effective rate of interest charged by the Defendant is usurious, in violation of Md. Code Ann., Comm. Law § 12-1003.

10. Additionally, the Defendant has charged loan fees in connection with loans made under CLEC when the loan is not secured by lien against residential property.

11. Lendmark knew its fees were usurious, but continued to charge them.

12. Lendmark further knew that refinanced loans should not count insurance premiums and finance charges twice, but deliberately double-counted them.

13. The Defendant also routinely files debt collection lawsuits in Maryland district courts, seeking affidavit judgments against Maryland consumers for inflated, usurious, and illegal loans.

14. The Defendant regularly violates the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-201 *et. seq.* ("MCDCA") and commits unfair or deceptive trade practices when it files lawsuits against Maryland consumers for usurious amounts.

15. Maryland consumers regularly enter into repayment plans to avoid the costs and stress associated with defending their cases in court.

16. This method of making usurious loans and suing consumers to enforce them is an unfair and deceptive practice, in violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301 *et. seq.* ("MCPA.") Pursuant to § 13-301 (14)(iii) violation of the MCDCA is also a *per se* violation of the MCDCA.

## PARTIES

17. Named Plaintiff is a resident of Maryland, is a natural person, and a consumer entered into a contract to obtain a loan from Defendant.

18. Lendmark is a corporation with offices in Maryland, which is licensed to do business in Maryland, and which regularly transacts business in Baltimore City, files lawsuits in Baltimore City, and collects judgment liens from consumers in Baltimore City.

## JURISDICTION AND VENUE

19. Jurisdiction of this Court arises under MD. CODE ANN., CTS & JUD. PROC. § 6-103(b), because Lendmark transacts business and performs work and provides services in Maryland, regularly does and solicits business in Maryland, and engages in other persistent courses of conduct in Maryland.

20. Venue in this Court is proper under MD. CODE ANN., CTS. & JUD. PROC. § 6-201 because the Defendant regularly transacts business within Baltimore City, Maryland.

4

## FACTS RELATING TO THE PLAINTIFF

21. The Plaintiff is a Lead Residential Coordinator II for Alliance, Inc., an organization that provides services to people with mental illness and developmental disabilities, in Belcamp, Maryland.

22. The Plaintiff cares for her partner's great-nephew and mother, who is eighty-four and suffers from dementia.

23. In 2012, the Plaintiff was a Program Administrator for Gullivan's Group Home, a residential treatment facility for young men and was raising a foster son.

24. On or about June 2012, the Plaintiff entered into a loan with Lendmark for approximately $999.00.

25. This loan included insurance premiums for life insurance, accident and health insurance, personal property insurance, and involuntary unemployment insurance.

26. The Plaintiff made the payments required under this loan and used it primarily for personal, household, and family purposes.

27. Based on her good track record, Lendmark contacted the Plaintiff and offered her more money, that it promised to "tie into the first loan."

28. On November 17, 2012, the Plaintiff went to Lendmark's storefront location in Baltimore City and signed a Combination Statement of Transaction, Promissory Note, & Security Agreement, which is the subject of this dispute ("the Note").

29. Lendmark agreed to give Named Plaintiff $750.15 in cash.

30. The Note (Exhibit A) also claims to have taken a security interest in personal property, but Named Plaintiff does not recall giving any personal property as collateral.

31. The Plaintiff used the additional funds extended primarily for personal, household, and family purposes.

32. Although the cash received was $750.15, Lendmark also charged Named Plaintiff the following:

   a. $1,519.66 Amount Paid on Prior Account

   b. $37.40 To Insurance Company for Life Ins.

   c. $75.54 To Insurance Company for Accident & Health Ins.

   d. $90.00 To Insurance Company for Personal Property Ins.

   e. $100.00 Loan Fee (Prepaid Finance Charge)

33. The total "amount financed" was therefore $2,472.75.

34. Lendmark charged an "annual percentage rate" of 26.891, resulting in a finance charge of $1,194.21 and total payments of $3,666.95.

35. Although the Named Plaintiff originally received $999.00 on the first loan, the amount paid to her prior account is $520.66 higher than the amount she received.

36. The Note also failed to include an accounting of any payments the Named Plaintiff made towards the first loan.

6

37.   The Note also failed to state that it was a refinance or modification of an original contract.

38.   Upon information and belief, Lendmark charged Named Plaintiff twice for the insurance premiums, once in the first loan and again in the second loan.

39.   Upon information and belief, Lendmark charged Named Plaintiff twice for the $100.00 Loan Fee (Prepaid Finance Charge), once in the first loan, and again in the second loan.

40.   Shortly after signing the Note, Gullivan's Group Home closed; the Named Plaintiff lost her job and got behind on the Note.

41.   Incidentally, while the Named Plaintiff believed she had paid for an unemployment insurance in the first loan, the second loan Note does not have any insurance premium stated for a policy.

42.   Maryland's CLEC governs this transaction and § 12-1003(a) dictates,

> (a) Interest charged authorized – A credit grantor may charge and collect interest on a loan at any daily, weekly, monthly, annual, or other periodic percentage rate as the agreement, the note, or other evidence of the loan provides if the effective rate of simple interest is not in excess of 24 percent per year. The rate of interest chargeable on a loan must be expressed in the agreement as a simple interest rate or rates.

43.   Although the additional charges (see Paragraph 20 of the Complaint) and the loan charge (see Paragraph 23 of the Complaint) may not be considered "interest" under Commercial Law Article § 12-1005, the conditions for these

charges to not be considered interest are not met here. Therefore, they are considered interest.

44. Therefore, the effective rate of interest charged by the Defendant exceeds the maximum allowed under CLEC.

45. Absent strict compliance with the statutorily requirements, a credit grantor "may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." Md. Code Ann., Comm. Law § 12-1018(a)(2).

46. The Note further states:

PREPAYMENT: I may prepay this note at any time without penalty. If I prepay this note in full, voluntarily or involuntarily (if you declare the note due), I shall receive a refund of any unearned insurance premiums paid by me. The Loan Fee, if any, is earned at the time the loan is made and will not be refunded.

47. Upon information and belief, when the first loan was paid by the Note, the balance should not have included any insurance premiums.

48. Upon information and belief, the first loan balance paid in the Note as "Amount Paid on My Prior Account" did include insurance premiums.

49. Upon information and belief, the Note included the finance charge of $100, meaning the finance charge has also been counted twice.

50. On February 26, 2013, Lendmark filed a debt collection action against the Named Plaintiff, Case No. 010100048292013, pending before the District Court for Baltimore City, seeking to recover $2,572.75, plus $385.91 in attorney's fees and prejudgment interest.

51. Upon information and belief, the prejudgment interest is inaccurately demanded at 24% instead of 6%.

52. Maryland courts have held that consumer loans under CLEC are not eligible for contractual prejudgment interest rates when the statutes do not provide express authority, because a lender is not entitled to unearned finance charges when it is no longer servicing the debt. *See First Virginia Bank v. Settles* 122 Md. 555, 588 A.2d 803 (1991) and *Union Trust Co. v. Tyndall*, 290 Md. 102, 428 A.2d 428 (1981).

53. Upon information and belief, the debt collection action that Lendmark filed against Named Plaintiff included insurance premiums, when it should not have included any insurance premiums.

54. Upon information and belief, as a part of its routine business practices in Maryland, Lendmark systematically and regularly charges Maryland consumers usurious interest rates in violation of Md. Code Ann., Comm. Law § 12-1003.

55. Upon information and belief, notwithstanding Lendmark's failure to comply with CLEC's interest rates, Lendmark has knowingly assessed, demanded and attempted to collect or has collected alleged balances from the Named Plaintiff and the Class, for which the borrowers were not liable as a matter of law. On information and belief, Lendmark has made unlawful demands to the Named Plaintiff and the Class, has falsely represented to those borrowers that balances

were owed, has collected money from borrowers to which they were not entitled, and has threatened to sue, and has sued, borrowers for balances not owed.

56. Upon information and belief, at all relevant times, Lendmark has had actual knowledge that the Named Plaintiff and the Class were being charged usurious interest rates and were not liable for any interest, costs, fees, or other charges with respect to the loan as a result of Lendmark's failures to comply with CLEC, but has nevertheless persisted in its unlawful collection activities.

57. Unless and until this Court grants the declaratory and injunctive relief that Plaintiffs seek through this action, Lendmark will continue to engage in business practices which violate CLEC and which result in profits to which Lendmark is not entitled.

## CLASS ALLEGATIONS

58. The Named Plaintiff brings this action individually, and on behalf of all persons similarly situated, known as the Class.

59. The Plaintiff proposes a Class consisting of the following:

> All persons who were consumer borrowers that entered into a contract with Lendmark pursuant to a credit contract governed by CLEC, and as to whom Lendmark charged an effective rate of simple interest in excess of 24% per year.

> and/or

> All persons who were consumer borrowers that entered into a refinance contract with Lendmark pursuant to a credit contract governed by CLEC, and as to whom Lendmark charged twice the number of insurance premiums and prepaid finance charge.

60. The Class, as defined above, is identifiable. The Named Plaintiff is a member of the Class.

61. Upon information and belief, the Class consists, at a minimum, of 50 persons and is thus so numerous that joinder of all members is clearly impracticable.

62. There are common questions of law and fact related to the Class, including:

    a. Whether Lendmark charged effective rates of simple interest in excess of 24% per year;

    b. Whether Lendmark knowingly violated CLEC provisions, and therefore should be required to pay three times the amount of interest, fees and other charges collected;

    c. Whether Lendmark misrepresented in writing to the Class the Defendant's right to collect funds from members of the Class;

    d. Whether Lendmark's actions violate the TILA.

    e. Whether declaratory and injunctive relief is proper, to prevent Lendmark from continuing to seek affidavit judgments in violation of CLEC and to compel Lendmark's compliance with CLEC;

    f. Whether the class members are entitled to a refund of all interest paid to the Defendant, as well as treble damages as provided by CLEC.

    g. Whether the Defendant's actions violate the MCDCA.

    h. Whether the Defendant's actions constitute unfair or deceptive trade practices under the MCPA.

    i. Whether the Class is entitled to any damages or losses by the Defendant.

63. The Defendant has acted on grounds that apply generally to all of the class members.

64. The only individual questions concern the identification of Class members and the actual damages of each Class member. This information can be determined by a simple ministerial examination of the business records of the Defendant. The Defendant maintains business records that consist of statements that can be searched, downloaded, and printed without an undue burden. Such business records are the same records that the Defendant has used to support its lawsuit filings and repayment agreements. Such business records are admissible as an exception to hearsay and as a statement by a party.

65. Plaintiff's claims are typical of the claims of the Class members.

66. Plaintiff is similarly situated with and has suffered similar damages as the other members of the Class.

67. Plaintiff will fairly and adequately protect the interest of all Class members in the prosecution of this action.

68. Plaintiff has retained attorneys who are experienced in consumer protection laws and experienced in class actions.

69. Plaintiff's attorneys are adequate to represent the Class.

70. A class may be certified pursuant to Rule 2-231 (b)(2) for the declaratory and injunctive relief sought for the Plaintiff and the Class.

71. A class may be certified pursuant to Rule 2-231 (b)(3) for the damage claims of the Plaintiff and the Class because a class is a superior method of providing relief and there is a predominate common issue as to whether or not the Defendant has the right to offset credit card debt from depository accounts.

## COUNT ONE
### VIOLATIONS OF THE MARYLAND CREDIT GRANTOR CLOSED END CREDIT PROVISIONS
### Md. Code Ann., Com. Law § 12-1001 *et. seq.*

72. Named Plaintiff re-alleges and incorporates by reference the allegations set forth above and further alleges:

73. Maryland's Credit Grantor Closed End Credit Provisions, Md. Code Ann., Comm. Law § 12-1001 *et seq.*, permit credit grantors such as Lendmark to provide closed end credit under certain circumstances and subject to certain limitations, including compliance with CLEC provisions relating to charging legal rates of interest. In the event, however, that the credit grantor fails to comply with the provisions of the statue the credit grantor must forfeit all interest

charges, fees and other charges with respect to the loan (Md. Code Ann., Comm. Law § 12-1018(a)(2)).

74. In violation of Md. Code Ann., Comm. Law § 12-1003, Lendmark charged a usurious interest rate.

75. Lendmark knowingly violated CLEC, § 12-1003 which makes it subject to actual damages and mandatory trebling under Md. Code Ann., Comm. Law § 12-1018(b).

## COUNT TWO
### VIOLATION OF THE MD. CONSUMER DEBT COLLECTION ACT
### Md. Code Ann., Com. Law § 14-201 *et. seq.*

76. Named Plaintiff re-alleges and incorporates by reference the allegations set forth above and further alleges:

77. The Defendant's actions to file lawsuits against consumers for usurious loans constitutes an attempt to collect a debt with knowledge that the right to collect the debt does not exist, in violation of the MCDCA § 14-202 (8).

78. The Defendant's actions to make loans that misstate the interest rate, double-count the insurance premiums, and double-count the prepaid finance charges, and do not properly identify that they are refinanced, rather than new contracts, in violation of the Truth in Lending Act, constitute an attempt to collect a debt with knowledge that the right to collect the debt does not exist, in violation of the MCDCA § 14-201(8).

79. The Defendant's actions to file lawsuits containing misleading and inaccurate statements about the legal status of the debt also constitutes an

attempt to collect a debt with knowledge that the right to collect the debt does not exist, in violation of the MCDCA § 14-202 (8).

80. The Named Plaintiff and Class Members have been damaged by the Defendant's wrongful debt collection methods.

### COUNT THREE
### VIOLATION OF THE MD. CONSUMER PROTECTION ACT
### Md. Code Ann., Com. Law § 13-101 *et. seq.*

81. Named Plaintiff re-alleges and incorporates by reference the allegations set forth above and further alleges:

82. Pursuant to MCPA § 13-301 (14)(iii), Defendant is a "person" and is prohibited from engaging in unfair and deceptive trade practices.

83. The Defendant's actions in violation of the Maryland Consumer Debt Collection Act constitute unfair or deceptive trade practices in violation of MCPA § 13-301 (14)(iii).

84. The MCPA prohibits Lendmark from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers. Md. Code Ann., Comm. Law § 13-301(1).

85. The MCPA further prohibits Lendmark from failing to state a material fact if the failure deceives or tends to deceive. Md. Code Ann., Comm. Law § 13-301(3).

86. The Defendant violated Md. Code Ann., Comm. Law §§ 13-303(3) and (4) and § 1301(1), by telling the Named Plaintiff and the Class in writing that

they were being charged a legal rate when in fact the effective rate of interest was usurious and by demanding payments for amounts of money not owed by the Class.

87. The Defendant further engaged in unfair and deceptive practices by collecting and attempting to collect on monies which, in fact, were not due, and this conduct constitutes unfair and deceptive trade practices in violation of the CPA, Md. Code Ann., Comm. Law § 13-101 et seq., including Md. Code Ann., Comm. Law §§ 13-303(3) and (4), and §§ 13-301(1) and (3).

88. As a result of Lendmark's unfair and deceptive trade practices in violation of the MCPA, members of the Class were induced to make payments to Lendmark on in excess of what is legal, causing members of the Repossession Class injury or loss.

89. The Defendant's use of a District Court Complaint to collect on the alleged debt is a material statement to the Plaintiff and Class members. The statement is false or misleading written statement which has the capacity, tendency or effect of deceiving or misleading consumers since Defendant signed affidavits alleging that the accounts were in default under the original contracts. This violates § 13-301 (1) of the MCPA.

90. The Defendant's method of filing district court cases that misrepresent the nature of this debt and the total amount due on consumer accounts to Maryland courts is an unfair and deceptive trade practice in violation of MCPA § 13-301.

91. The Named Plaintiff and class members relied on the Defendant's written and oral statements and entered into loan agreements with Lendmark.

92. The Plaintiff and class members have been damaged by the Defendant's commission of unfair and deceptive trade practices by the Defendant by having to repay usurious amounts and defend themselves in debt collection lawsuits.

## COUNT FOUR
### DECLARATORY AND INJUNCTIVE RELIEF

93. Named Plaintiff re-alleges and incorporates by reference the allegations set forth above and further alleges:

94. Plaintiff seeks a declaratory judgment that the Defendant may not charge usurious interest rates and file debt collection lawsuits to collect on usurious loans.

95. The Defendant continues to charge usurious interest rates.

96. There is an actual controversy between the Parties.

97. Plaintiff is entitled to a declaratory judgment pursuant to Md. Code Ann., §§ 3-401–3-415, and Rule 2-231 (b)(2).

98. The Plaintiff seeks a declaratory judgment that the Defendant's acts violate the Maryland Consumer Debt Collection Act and constitute unfair or deceptive trade practices in violation of the Maryland Consumer Protection Act.

99. The Defendant will continue to act in the same manner and in violation of law if this Court does not grant injunctive relief.

100. The benefits to the Class have a right to be free from Lendmark's attempts to collect interest, fees, and costs, and other charges, which are not collectible as a matter of law under the terms of its contracts with the Class.

101. The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing Lendmark from violating the statutory and common law of the State of Maryland in its loan practices, and a compelling interest in seeing the laws of the State of Maryland obeyed.

102. The Named Plaintiff and members of the Class are likely to succeed on the merits of this action, as CLEC explicitly requires that Lendmark limit the interest rate it charges.

## PRAYER FOR RELIEF

Wherefore the Plaintiffs pray for the following relief to be granted on the complaint:

a. An order certifying a class of persons as set forth herein for the claims asserted herein;

b. An order appointing the Plaintiff as Class Representative of the Class;

c. An order appointing the Plaintiff's counsel as class counsel for the Class;

d. A preliminary and permanent injunction enjoining the Defendant as requested herein;

e. An award of damages or other relief that the Class may be entitled to from the Defendant believed to be in excess of $1,000,000;

f. An award of costs, including attorney's fees as allowed by law; and

g. Such other and further relief that the nature of the Plaintiff's cause and the Class' cause may require.

### NOTICE OF CLAIM FOR ATTORNEY'S FEES

Plaintiffs hereby give notice, pursuant to the Maryland Rules, that they seek attorneys' fees pursuant to statute, in this case.

Respectfully Submitted,

/s/ Jane Santoni
Jane Santoni
Williams & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 938-8666
(410) 938-8668 (fax)
jane@williams-santonilaw.com

/s/ Kathleen P. Hyland
Kathleen P. Hyland
Williams & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 938-8666
(410) 938-8668 (fax)
kat@williams-santonilaw.com

*Attorneys for Plaintiff and the Class Described Herein*

## REQUEST FOR A TRIAL BY JURY

Plaintiff, individually and on behalf of the classes, requests a trial by jury of any claims that may be determined by a jury.

Dated: November 17, 2015

                                                Kathleen P. Hyland
                                                Williams & Santoni, LLP
                                                401 Washington Avenue, Suite 200
                                                Towson, Maryland 21204
                                                (410) 938-8666
                                                (410) 938-8668 (fax)
                                                *Attorneys for Plaintiff and the Class*
                                                *Described Herein*