IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SHERRYL FIGGS | * |
| v. | * Civil No. JFM-16-566 |
| LENDMARK FINANCIAL SERVICES, LLC | * |

******

## MEMORANDUM

Plaintiff Sherryl Figgs brings a putative class action against defendant Lendmark Financial Services, LLC ("Lendmark") relating to Lendmark's loan refinancing practices. Lendmark removed the case from Baltimore Circuit Court and Figgs has now filed a motion to remand. The parties have fully briefed the motion and no oral argument is necessary. *See* Local Rule 105.6. For the reasons set forth below, Figgs's motion is granted.

## BACKGROUND

In June 2012, Lendmark issued a loan to plaintiff Sherryl Figgs for $2,000.15. (ECF No. 5, ¶¶ 19–20). In November 2012, Lendmark offered Figgs another cash loan, which it promised to "tie in to the first loan." *Id.* at ¶ 22. In light of this offer, Figgs entered into another loan agreement with Lendmark, combining the first and second loan, which provided her with another $750.15 in cash. *Id.* at ¶ 24. After losing her job, Figgs fell into default on the loan and Lendmark filed a debt collection action in the District Court for Baltimore City. *Id.* at ¶ 43. On November 17, 2015, Figgs filed a putative class action complaint against Lendmark, alleging that Lendmark had charged usurious interest rates when it double charged Figgs for "bogus insurance premiums and finance charges." (ECF No. 2, ¶ 5). Figgs asserted claims for violations of the Maryland Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann., Com. Law

1

§§ 12–1001, *et seq.*, the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14–201, *et seq.*, and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13–301, *et seq.* On February 8, 2016, Figgs filed an amended complaint, in which she deleted her allegations that Lendmark had double charged her. In their place, Figgs added allegations that Lendmark's loan fee and finance charges exceeded 10% of the original extension of credit and drove the overall interest rate for Figgs's loan higher than 24% in violation of Maryland law. Figgs again asserted counts against Lendmark for violations of the Maryland CLEC, MCDCA, and MCPA and added a claim for unjust enrichment and restitution. Figgs's putative class consisted of:

> All persons who were consumer borrowers that entered into a contract with Lendmark pursuant to a credit contract governed by CLEC, and as to whom Lendmark charged an effective rate of simple interest in excess of 24% per year.
>
> And/or
>
> All persons who were consumer borrowers that entered into a contract with Lendmark pursuant to a credit contract governed by CLEC, and as to whom Lendmark charged loan fees and other charges in excess of ten percent of the original extension of credit.

*Id.* at ¶ 55. Lendmark removed the case from Baltimore City Circuit Court on February 26, 2016 pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1453, and 28 U.S.C. § 1332(d). (ECF No. 1). Now pending is Figgs's motion to remand the case back to state court. (ECF No. 12).

## STANDARD

Plaintiff seeks to remand the case on the ground that defendant's notice of removal was untimely. 28 U.S.C. § 1446(b) requires that a notice of removal be filed within 30 days of defendant's receipt of an initial pleading or, if the initial pleading does not provide a basis for

removal, 30 days after receipt by the defendant of an amended pleading from "which it may first be ascertained that the case is one which is or has become removable." When a defendant fails to timely remove a case, the right to remove is forfeited. *See McKinney v. Bd. of Trustees of Mayland Cmty. Coll.*, 955 F.2d 924, 925 (4th Cir. 1992).

## ANALYSIS

Plaintiff seeks to remand this case on two independently sufficient grounds. First, plaintiff contends that Lendmark has not established jurisdiction as required under CAFA. Second, plaintiff argues that Lendmark filed an untimely notice of removal. Because I find that Lendmark did not file the notice of removal within the time allotted by § 1446(b), I do not reach plaintiff's CAFA argument.[1]

Lendmark admits here that it filed its notice of removal more than 30 days after it received plaintiff's initial pleading.[2] (*See* ECF No. 15, pp. 16–17). Lendmark argues, however, that its right to remove was "revived" by changes plaintiff made to her amended complaint and thus, that its removal within 30 days of plaintiff's filing of her amended complaint was permissible.

The judge-made "revival exception" to the 30-day removal rule "provides that a lapsed right to remove an initially removable case within thirty days is restored when the complaint is amended so substantially as to alter the character of the action and constitute essentially a new lawsuit." *Johnson v. Heublein Inc.*, 227 F.3d 236, 241 (5th Cir. 2000). Although the Fourth Circuit has yet to consider the issue, and to my knowledge, no court in the circuit has invoked the

---

[1] Lendmark has filed a motion for leave to file a declaration in support of removal. (ECF No. 19). That motion is granted.

[2] Lendmark also does not argue that the amended complaint constitutes "an amended pleading . . . from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

3

revival exception to restore a defendant's right of removal, sister circuits have held that the exception does exist. *See id.*; *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962 (7th Cir. 1982); *but see Tucker v. Equifirst Corp.*, 57 F. Supp. 3d 1347, 1350–58 (S.D. Ala. 2014) (holding that the plain language of 28 U.S.C. § 1446(b) precludes a judge-made revival exception). The exception, however, is limited and applies only when an amended complaint "so changes the nature of [plaintiff's] action as to constitute 'substantially a new suit begun that day.'" *Wilson*, 668 F.2d at 965; *see also Paraclete Aero, Inc. v. Protective Products Enterprises, LLC*, No. 1:13-325, 2013 WL 6070377, at *3 (M.D.N.C. Nov. 18, 2013) ("[C]ourts have limited revival to cases in which the amended complaint so *radically alters* the basic character of the litigation that denying the defendant the right to removal would be patently unfair.") (emphasis in original). *MG Bldg. Materials, Ltd. v. Paychex, Inc.*, 841 F. Supp. 2d 740 (W.D.N.Y. 2012) is illustrative. In *MG Bldg.*, two plaintiffs sued a payroll administrator in state court. The defendant did not seek to remove either of plaintiffs' first two complaints. When plaintiffs filed a third amended complaint, however, this time asserting a putative class action and "potentially involving thousands of class members across the country . . . [with] damage claims [growing] to a whopping $15 billion," *id.* at 748, the defendant finally removed the case to federal district court. The district court, in considering plaintiffs' motion to remand, noted that courts had formulated the revival exception in a variety of different ways, but observed that the essence of the exception is "that where a defendant has failed to exercise its right to remove within § 1446(b)'s thirty-day period, the defendant's right to remove can be 'revived' if the plaintiff amends the complaint, and in so doing dramatically changes the essential character of the action." *Id.* at 744–45. The *MG Bldg.* court also stated that "[w]here the pleading amendments do not change the target of a plaintiff[']s attack, the basic legal theory of the case,

4

or the nature of the relief sought there is no revival." *Id.* at 745 (internal quotation marks omitted). The court held that removal in the circumstances presented was proper because, although defendant had not exercised its right to remove within the 30-day period prescribed by § 1446(b), plaintiffs' new allegations had "so dramatically changed [the complaint] as to revive, out of fairness concerns, defendant's right to remove it." *Id.* at 751.

Assuming, for the purposes of plaintiff's motion to remand, that the revival exception does exist, I find that it does not apply here. The difference between plaintiff's first complaint and second is not so dramatic as to justify application of the revival exception. In contrast to *MD Bldg.*, Figgs's amended complaint does not change her basic legal theory, prayer for relief, or target of attack. First, Figgs's amended complaint has not changed her target of attack because the new complaint does not substantially change the nature of the case. Unlike *MD Bldg.*, there has been no expansion of the parties. The case remains, as it was originally filed, a class action against Lendmark arising out of Lendmark's allegedly usurious loan practices. Second, at a general level, the basic theory of the case also remains unchanged. Although plaintiff has revised her factual allegations, her claims still relate to the same general subject matter—the legality of defendant's loan refinancing practices as they relate to her and the proposed class. (*Compare* ECF No. 2, ¶ 9 ("The effective rate of interest charged by the Defendant is usurious") *with* ECF No. 5, ¶ 7 (same)). The legal bases for plaintiff's amended complaint are almost identical to the complaint that came before it—in the two versions of the complaint, plaintiff alleges violations of the Maryland CLEC, MCDCA, and MCPA. The language supporting these claims is substantially similar in both pleadings. (ECF No. 5, Ex. A, ¶¶ 68–89). The only novel count in plaintiff's amended complaint, a claim for unjust enrichment and restitution, is derivative of the other claims. Third, there is no change in the nature of relief sought. In both

5

the original and amended complaint, plaintiff seeks the same relief—a declaratory judgment, injunctive relief, damages, and attorneys' fees. (*See id.*, Prayer for Relief). Although it is possible that the changes in plaintiff's complaint may increase, or decrease, plaintiff's damage claims, Lendmark makes no argument to this effect. Even if it had, it is entirely implausible that any potential increase in damages sought by plaintiff here would be comparable to the change in damages found in *MD Bldg.*, where plaintiffs' damage claims ballooned from $170,000 to $15 billion, "an increase of over nine million percent." 841 F. Supp. 2d at 748. In conclusion, plaintiff's new complaint has not "dramatically change[d] the essential character of the action," and thus, the revival exception does not apply. *Id.* at 745.

The fact that plaintiff has shifted the underlying factual allegations in her complaint does not change the result. Lendmark argues that plaintiff's case is a new one because plaintiff's initial complaint was based "on the unsupported and false allegations that Plaintiff was charged twice for the same insurance premiums and loan fees," (ECF No. 15, p. 18), and plaintiff has since pivoted to a legal theory that Lendmark's fees drove the interest rate for its loans above 24%, the maximum permitted under the Maryland CLEC.[3] But these changes do not show that plaintiff has asserted a fundamentally different case from before, which allows Lendmark to revive its right of removal. Again, as before, plaintiff's claims stem from Lendmark's administration of her refinanced loan, and the refinanced loans of the putative class. While plaintiff's factual allegations have shifted, their general subject matter has remained the same,

---

[3] Lendmark also argues that revival is appropriate, in part, because plaintiff added a new allegation claiming that Lendmark's loan fee and finance charges exceeded 10%, the legal maximum, for Figgs's and putative class members' original extension of credit, and expanded her class definition to reflect this allegation. (ECF No. 5, ¶¶ 39–40, 55). Because it is likely, however, that this class definition covers many of the same putative class members as plaintiff's unaltered class definition—those consumers "to whom Lendmark charged an effective rate of simple interest in excess of 24% per year," (ECF No. 2, ¶ 59, ECF No. 5, ¶ 55)—plaintiff's amendment does not drastically change the nature of the suit.

6

and Lendmark was thus on notice that plaintiff was suing Lendmark for its actions relating to Figgs's and other putative class members' refinanced loans. Accordingly, it would not be unfair or unjust to defendant to remand the case. Likewise, the fact that the amended complaint did not provide any new distinct grounds for removal is further evidence that the amended complaint did not represent a substantially new suit. Lendmark alleged in its notice of removal that the case met CAFA's numerosity requirement because Lendmark identified "more than 4,000 consumer borrowers who, like Figgs entered into a contract to refinance a loan with Lendmark pursuant to a credit contract governed by CLEC at an effective rate of simple interest of 24% and was charged a $100 loan fee." (ECF No. 1, p. 7). Lendmark's numerosity contention, however, was quite clearly based on plaintiff's proposed class definition of "[a]ll persons who were consumer borrowers that entered into a contract with Lendmark pursuant to a credit contract governed by CLEC, and as to whom Lendmark charged an effective rate of simple interest in excess of 24% per year," which plaintiff set out in both her amended and *original* complaint. (*See* ECF No. 2, ¶ 59, ECF No. 5, ¶ 55). Therefore, Lendmark could have timely removed plaintiff's original complaint on the exact same grounds that it now seeks removal, demonstrating that plaintiff's amended complaint is not so different from her initial pleading that it constitutes a new suit.

## CONCLUSION

In sum, because plaintiff's amended complaint did not change her basic legal theory, prayer for relief, target of attack, or defendant's grounds for removal, it was not a new claim allowing for revival and defendant's notice of removal was untimely. Accordingly, plaintiff's motion to remand is granted.

_____
Date

_____
J. Frederick Motz
United States District Judge